[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs appeal from the assessment of damages by the defendant for the taking of a portion of their property and of certain rights as found necessary by him for the layout, alteration, extension, widening, change of grade and improvement of Walnut Street in Hartford. The taking is CT Page 159 described in the complaint and is shown on a map entitled: "CITY OF HARTFORD MAP SHOWING LAND ACQUIRED FROM MEI-FAR ASSOCIATES BY THE STATE OF CONNECTICUT WALNUT STREET SCALE 1" = 40' AUGUST, 1994 JAMES F. BYRNES, JR — TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS." The map was dated April 4, 1995. A copy of the map was introduced into evidence by agreement and was marked Exhibit A.
The parties agreed that the date of the taking was May 25, 1995 and that damages as assessed by the defendant in the amount of $5,775 had been deposited with the clerk of the court by the defendant and withdrawn by the plaintiffs.
Hartford is the capital city and lies in about the center of the State. It is well served by transportation systems and communications media. The economic downturn which has affected Connecticut has had its impact on Hartford too. The city has an office vacancy rate of about 25% and there is little demand for commercial building. Real estate prices have declined since their high point in 1985 to 1989.
The subject property is in the central business district of Hartford. It is on the south side of Walnut Street and is bordered on the west by Hoadley Place. It is situated approximately at the High Street entrance ramp to I-84, a major east/west interstate highway. This advantage is somewhat diminished by the fact that the subject property is located to the north of I-84 which as a practical matter separates the central business district from the northern part of the city.
The subject property before the taking contained 6, 447 square feet, more or less. It is bounded on the north by Walnut Street, on the east and south by land of the State of Connecticut, and on the west by Hoadley Place. It is generally level and it is somewhat irregular in shape. There are no buildings on the subject property, but it is in the B-1 zone. It has frontage of 80.69 feet on Walnut Street and 75.64 feet on Hoadley Place.
The B-1 zone has no height or setback restrictions except for a ten foot building line on Walnut Street. The allowable density is ten times lot area, which would permit a multistory office building. The immediate neighborhood has business and industrial properties, some multifamily properties and some CT Page 160 vacant lots.
The taking consists of a strip of land containing 1,004 square feet, more or less, along Walnut Street and at the Hoadley Place corner, taken in order to widen Walnut Street. Also taken was a right to grade on a portion of the remaining land within an area of 95 square feet, more or less, to terminate upon completion of the work.
After the taking, the subject property will contain 5,443 square feet, more or less. The frontage will increase slightly on Walnut Street and decrease slightly on Hoadley Place because of the configuration of the taking. The commercial utility of the property will remain as before, but the allowable density will be ten times the reduced lot area.
The highest and best use for the subject property is to hold it for future commercial development when that becomes financially feasible, and for interim use as parking.
Peter R. Marsele, a qualified real estate appraiser, was called as an expert witness by the plaintiffs. Marsele opined commercial development with a modern building. He used the market comparison approach to value and estimated the fair market value of the property before the taking as $128,000. He opined that the taking will eliminate 10,040 square feet of potential building area resulting in severance damages. He concluded that the fair market value of the property after the taking would be $90,000 and estimated damages at $38,000 including $18,000 in severance damages.
The defendant called Steven D. Hurlbut, a qualified real estate appraiser, as an expert witness. He opined that the highest and best use for the subject property is to hold it for future commercial development upon the recovery of the commercial market in the city, and to use it for parking in the interim. He used the sales comparison method of appraisal and concluded that the fair market value of the property before the taking was $37,075. He concluded that there were no severance damages resulting from the taking because the property is vacant and because the type of structure which might be built, and when it might be built in the future, remain in the realm of speculation. He concluded that the fair market value of the property after the taking was $31,300 and estimated damages at $5,775. CT Page 161
Although the zoning regulations permit a development density ten times the lot area, so that the taking removes about 10,000 square feet of building area, the prospect of any developer planning to erect a skyscraper office building on this property, in this location, in the foreseeable future is so speculative as to have a dreamlike quality about it. Some future commercial development seems likely when financially feasible. A large office building in that part of the city does not seem to be a reasonable possibility, particularly when local businesses are downsizing and there are many vacant spaces in the city. There are no plans for such a building on the subject property, and to find severance damages for loss of potential building area in these circumstances would be so speculative as to be unreasonable.
The duty of the referee in condemnation matters is to make an independent determination of value and fair compensation in light of all the circumstances. Having seen the subject property, and having given full consideration to all of the testimony and all of the evidence offered by the parties, and relying upon my own knowledge of the elements constituting value, I have concluded that the damages sustained by the plaintiffs are $8,785. Judgment may enter for the plaintiffs to recover the further sum of $3,010 in addition to the $5,775 which was deposited with the clerk by the defendant, with interest on such further sum from the date of taking to the date of payment, together with an allowance of $1,000 toward the appraisal fee.
George D. Stoughton State Trial Referee